706 A.2d 36 (1998)
In re Q.D.G., Appellant.
No. 96-FS-1067.
District of Columbia Court of Appeals.
Argued January 14, 1998.
Decided February 5, 1998.
Cynthia Goode, Public Defender Service, with whom James Klein and Jaclyn Frankfurt, Public Defender Service, were on the brief, for appellant.
Sidney R. Bixler, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel at the time the brief was filed, Robert R. Rigsby, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Assistant Corporation Counsel, were on the brief, for the District of Columbia.
Before TERRY, SCHWELB, and FARRELL, Associate Judges.
SCHWELB, Associate Judge:
Following a fact-finding hearing before a judge sitting without a jury, Q.D.G., a juvenile, was found guilty of unauthorized use of a motor vehicle (UUV), in violation of D.C.Code § 22-3815(b) (1996).[1] On appeal, he contends that the trial judge erred by failing to impose sanctions against the District for an alleged discovery violation.[2] Because *37 any exercise of the trial judge's discretion with respect to the imposition of sanctions rested on a misapprehension as to the applicable law, we remand the case to the trial court for further proceedings.

I.
In the afternoon of February 13, 1996, police officers observed Q.D.G., who was then fourteen years old, operating a Honda automobile at a high rate of speed in the vicinity of McKinley High School. Q.D.G. was doing so just as the students were being released from school. The Honda had New Jersey license plates, and officers later learned that it was registered to a resident of New Jersey. The officers turned on their emergency equipment and initiated a pursuit of the Honda.
Q.D.G. continued to drive erratically in an effort to elude the officers. He soon rammed a parked car, "bailed out," and ran. The police gave chase and eventually apprehended Q.D.G. The boy then became involved in a physical altercation with one of the officers. This altercation led to Q.D.G.'s hospitalization and to the filing of the APO charge of which Q.D.G. was subsequently acquitted.
In the absence of any testimony from the owner of the Honda, a principal issue at the fact-finding hearing was whether the District had shown that Q.D.G.'s operation of the vehicle was unauthorized. In concluding that the District had proved its case, the trial judge noted, inter alia, that Q.D.G. was only fourteen years old, that he had no driver's license, that he could not produce the registration papers, and that he attempted to escape from the police, initially by driving recklessly and later by running away. The judge also credited the testimony of a police officer that the steering column of the Honda had been "punched out," and he concluded that Q.D.G. therefore "should have easily known that it was a stolen vehicle even if he didn't steal it himself."

II.
Prior to the trial, Q.D.G.'s attorney requested counsel for the District to preserve and produce the Honda for inspection. Counsel for the District provided defense counsel with a "viewing letter" authorizing defense counsel to have access to the car, which was said to be at a Metropolitan Police Department lot. Q.D.G.'s attorney made several visits to the lot, however, and police officers advised him that the Honda could not be found. Q.D.G. then filed a pretrial motion for sanctions, and the trial judge heard the motion in advance of the fact-finding hearing.
At the motions hearing, Q.D.G.'s attorney contended that he was entitled to inspect the Honda, or at least to view detailed photographs of the vehicle, under the provisions of Super. Ct. Juv. R. 16(a)(1)(C).[3] Counsel argued that, in light of the police officer's testimony as to the condition of the ignition, the Honda, a "tangible object," was not only "in the possession, custody or control of the government," but also "material to the respondent's defense," all within the meaning of that Rule. The defense contended that the District's failure to preserve the Honda or photographs of the vehicle for inspection by Q.D.G.'s attorney was in violation of Rule 16, and that the District should be precluded from introducing any evidence as to the condition of the car.
Counsel for the District took the position that Rule 16 was inapplicable and that the police had no obligation to preserve the vehicle or to produce it for defense counsel's *38 inspection. The judge agreed with the District:
I just really don't see [the car] as being evidence. Frankly, I can't conjure up a scenario where it would be evidence.
The judge therefore denied the motion for sanctions, noting that "[i]t might be an interesting point for appeal."

III.
In this court, the District has abandoned its position that the Honda was not subject to discovery under Rule 16. The District argues, instead, that it did not act in bad faith or negligently in failing to make the Honda available for inspection by the defense, and that the denial of sanctions therefore constituted an appropriate exercise of the trial judge's discretion.
The determination as to what sanction, if any, should be imposed for a discovery violation is committed to the sound discretion of the trial judge. Cotton v. United States, 388 A.2d 865, 869-70 (D.C.1978). That discretion must, however, be exercised in accordance with correct legal principles. In re Application of L.L., 653 A.2d 873, 880 (D.C.1995) (citation omitted); Conrad v. Medina, 47 A.2d 562, 565 (D.C.Mun.1946). "[A] trial court abuses its discretion when it rests its conclusions on incorrect legal standards." In re J.D.C., 594 A.2d 70, 75 (D.C. 1991) (citation omitted); see generally Johnson v. United States, 398 A.2d 354, 365 (D.C. 1979). In the present case, the trial judge's disposition of the issue of sanctions was significantly affected (and, arguably, entirely controlled)[4] by his acceptance of the District's contention that the Honda was not "evidence" and that the District therefore was not required under Rule 16 to make the car available for inspection by the defense.
Given the District's concession in this court (with which we agree)[5] that, on this record, Q.D.G.'s counsel was entitled under Rule 16 to view either the Honda or sufficiently informative photographs of the vehicle,[6] we conclude that any exercise of discretion by the trial judge as to sanctions was undermined by a misapprehension on his part as to a controlling legal principle. Accordingly, we remand the case to the trial court for further proceedings consistent with this opinion, including a determination as to what, if any, sanctions should have been imposed. See Cotton, supra, 388 A.2d at 869-70; Allen v. United States, 649 A.2d 548, 552-54 (D.C.1994). If the court concludes that sanctions were called for, then it shall determine whether the trial judge's failure to impose sanctions resulted in substantial prejudice to Q.D.G. In the event that the court finds such prejudice, Q.D.G. is entitled to a new trial.
So ordered.
FARRELL, Associate Judge, concurring:
After concluding that the Honda was not within the reach of Rule 16, the trial judge went on to state (as an apparent "in any event") that "the government did set in motion the proper procedures to preserve this *39 car," thereby presumably satisfying any duty of preservation it had under the rule. The government relies on this statement in its brief and can be expected to make a similar argument on remand. But the trial judge did not call for any testimony by police representatives about the security procedures at the vehicle impoundment lot, in a case where a car of conceded evidentiary value had disappeared unaccountably from the lot. At least minimal such testimony about whether "the proper procedures to preserve" impounded vehicles actually are followed would seem necessary before a judge can say that the non-preservation of the car here stemmed from an objectively "good faith loss," Cotton v. United States, 388 A.2d 865, 869 (D.C.1978), allowing the judge to dispense with sanctions. The court's opinion certainly does not preclude such testimony.
NOTES
[1] Q.D.G. was acquitted of a separate charge of assault on a police officer (APO).
[2] Q.D.G. also claims that the evidence was insufficient to support the trial judge's finding that Q.D.G.'s operation of the motor vehicle was unauthorized. Although the owner of the vehicle did not testify, we conclude that the trial judge could properly infer that Q.D.G. was driving the car without the owner's consent. See, e.g., In re T.M., 577 A.2d 1149, 1151 (D.C.1990) (articulating standard); Randall v. State, 583 P.2d 196, 199 (Alaska 1978) (non-consent may be inferred from circumstantial evidence); In re Basille N., 228 A.D.2d 323, 644 N.Y.S.2d 233, 234-35 (1996) (sustaining finding of guilt on facts somewhat similar to those here presented).
[3] That Rule provides:

(C) Documents and tangible objects. Upon request of the respondent, the Corporation Counsel shall permit the respondent to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the respondent's defense, or are intended for use by the government as evidence in chief at the factfinding hearing, or were obtained from or belong to the respondent.
[4] The trial judge's oral decision on the motion for sanctions was not entirely consistent internally with respect to the basis on which the motion was denied. At the very least, however, the judge's view that the District had no obligation to produce the vehicle played a very significant role in his disposition of the motion.
[5] The Honda was a "tangible object" in the "custody or control" of the District, and the condition of the ignition was "material to the preparation of respondent's defense."
[6] Nothing in this opinion should be construed as suggesting that a vehicle which is the subject of a charge of UUV should not be returned to the owner at the earliest practicable date. In this case, counsel for Q.D.G. has represented that detailed photographs of the Honda and, in particular, of the allegedly "punched out" ignition, would have been sufficient. Cf. NEW YORK PENAL LAW § 450.10(4)(c) (McKinney 1997 Supp.), specifying that photographs provided to defense counsel in such cases shall include

the vehicle identification number, registration on windshield, license plates, each side of the vehicle including vent windows, door locks and handles, the front and back of the vehicle, the interior of the vehicle, including ignition lock, seat to floor clearance, center console, radio receptacle and dashboard area, the motor, and any other interior or exterior surfaces showing any and all damage to the vehicle.
The District of Columbia has no corresponding statute, and we express no view as to what sort of detail is necessary for photographs to substitute for the vehicle itself.